DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

*(Continued from Volume 36.)*

MILLER v. MT. NEBO LAND & IRRIGATION COMPANY et al.

No. 1997. Decided January 3, 1910 (106 Pac. 504).

1. TRIAL—FINDINGS—CONFLICTING FINDINGS. The complaint alleged the purchase from defendant of a tract of land with irrigation rights, for the contract price of $1150, and the contract showed a payment thereon of $247.50 when it was executed, and the complaint alleged that plaintiff rendered services for defendant to the value of $986, which the answer denied, but admitted that the services were of the value of $597.75. The court found that a payment of $247.50 was made, and allowed $400 as damages for a breach of the contract, and found that $403 was yet due on the contract price, but made no finding as to the value of plaintiff's labor. *Held*, that, as the amount which defendant admitted to be the value of the labor, together with the amount found to have been paid on the contract and that allowed as damages, aggregated more than the contract price, the finding that $403 was yet due on the contract was inconsistent with the facts found. (Page 7.)

2. TRIAL—SPECIAL VERDICT—FINDINGS—CONCLUSIONS. In an action for damages for breach of a contract, by failure to furnish water for irrigation as agreed, a finding that the shortage of water was caused by act of God was a mere conclusion which could not aid the judgment. (Page 8.)

APPEAL from District Court, Fourth District; *Hon. J. E. Booth,* Judge.

Action by Martha E. Miller against the Mt. Nebo Land & Irrigation Company and others, in which one of the defendants set up a counterclaim.

Judgment for defendant on the counterclaim. Plaintiff appeals.

JUDGMENT VACATED, AND CASE REMANDED FOR NEW TRIAL.

*Edwards, Smith & Price* for appellant.

*W. R. Hutchinson* for respondents.

### APPELLANT'S POINTS.

This court has decided in a number of cases that where findings are inconsistent with each other, and against the pleadings, they will be set aside on appeal. (*Sanberg v. Victor Mining Co.,* 24 Utah 1; *Nephi Irrigation Co. v. Jenkins,* 8 Utah 369; *Nephi Irrigation Co. v. Vickers,* 15 Utah 374; *Lost Creek Irrigation Co. v. Rex,* 26 Utah 485.)

### RESPONDENT'S POINTS.

If the findings and pleadings taken together fairly justify the judgment, notwithstanding a want of precision and an occasional intermixture of fact and conclusions of law, it is sufficient. (*O'Reilly v. Campbell,* 116 U. S. 418; *Maynard v. Loco. Eng. Ins. Association,* 16 Utah 145, 51 Pac. Rep. 259.)

If a decree in an equity suit is in accordance with the evidence, it makes no difference whether it is supported by the findings or not. (*Maxfield v. West,* 6 Utah 329, 24 Pac. Rep. 98; *Fisk v. Patton,* 7 Utah 399, 27 Pac, Rep. 1.)

'It is of no consequence whether a certain finding is a finding of ultimate fact or a conclusion of law where there are other findings supporting the questionable finding and rendering it practically unnecessary. (*Synder v. Emerson,* 19 Utah 319, 57 Pac. Rep.· 300.)

STRAUP, C. J.

The Mt. Nebo Land & Irrigation Company, a corporation, was engaged in the business of developing · and conducting water for irrigation and other beneficial purposes, and was the owner of certain reservoirs, franchises, privileges, and water rights in and to the waters of Little Salt Creek Canyon and Current Creek, and their tributaries, and was also the owner of certain lands in the vicinity of such creeks. In September, 1897, it entered into a written agreement with the plaintiff, by the terms of which it agreed to convey to plaintiff twenty-five acres of land and a certain quantity of water, to be delivered by it from such creeks, upon the payment of $1150, $247.50 of which was paid upon the execution of the contract, and the balance to be paid in annual payments of $218.87 each, together with interest on the deferred payments. It was further stipulated in the contract that the company was required to deliver the water during the irrigation season of each and every year, extending from April to October, and to keep and maintain the canal system and the reservoirs in good order and condition. It was also stipulated that the company should not be responsible for deficiency of water "caused by the act of God, forcible entry, or temporary damage by floods or other accidents, but the irrigation company shall use and employ all due diligence at all times in restoring and protecting the flow of water in its canals and laterals." The contract contains other provisions not necessary here to be noticed. In September, 1899, the plaintiff and the irrigation company entered into another written contract, by the terms of which the company agreed to convey to her seven and one-half acres of land, and certain water rights, for the sum of $750, $200 of which was paid when the contract was executed, the bal-

ance to be paid in four equal payments of $137.75 each, together with interest at seven per cent. per annum.

The execution and terms of these contracts were alleged in the complaint. The plaintiff further alleged that the sum of $247.50 was paid by her on the first contract, and that in the year 1900 she, at the instance and request of the defendant irrigation company, rendered and performed services for said company, the value of which was agreed between them to be $652.25, and that in 1905 she again rendered services for said defendant in repairing and cleaning the canals and ditches, and that such work was reasonably worth $333.75. She further alleged that she had perfromed all the conditions of the contract on her part to be performed, but that the said defendant, between the years 1901 and 1906, both inclusive, "failed, neglected and refused to furnish and deliver the water therein agreed to be furnished by it" to plaintiff's damage in the sum of $809.75, and that it also failed and refused to convey the lands to the plaintiff, notwithstanding her demand for a conveyance. She also alleged that she had fully performed all the conditions of the second contract on her part to be performed, and that the said defendant, during the years 1901 to 1906, both inclusive, had likewise failed and refused to deliver the water agreed to be delivered by that contract, to her damage in the sum of $499, and that said defendant had also refused to convey the lands agreed to be conveyed to her by that contract, notwithstanding her demand for a conveyance. She prayed a judgment decreeing a conveyance of the lands to her, and a money judgment in the sum of $1038.75.

The irrigation company and the other defendants answered, admitting the contracts, and that the plaintiff had "paid in labor" on the first contract the sum of $597.75, and alleging that there was due and unpaid by reason of that contract, together with interest, the sum of $1424.34, no part of which had been paid. They admitted that the sum of $200 was paid on the second contract, and that labor was performed by plaintiff to the value of $57.50 which should also be applied thereon, but alleged there was due on that

contract the sum of $1140, no part of which had been paid. It further alleged that it had a lien on the real estate agreed to be conveyed for the payment of such sums, and that all its right, title, and interest in and to the contracts and to its lien had been sold and assigned to the defendant H. W. Brown. It further alleged "that from about the year 1901 to about 1906 there was a shortage of water in the reservoir of said system, caused by the act of God, over which defendants had no control, and by the terms of said (first) contract were not held liable; that plaintiff secretly took from said water system, during all of said period, more than the quantity of water named in said agreement, and used the same upon the said described lands." It denied plaintiff's damages resulting from its failure to furnish and deliver water. The defendants, the irrigation company and Brown, thereupon prayed that the plaintiff take nothing by her complaint, and that Brown be given judgment against her for the sum of $1424.34, with interest, on account of the first contract, the sum of $1140, with interest, on account of the second contract, and that the lands mentioned and described in the contracts be sold, and the proceeds of sale applied in payment thereof.

A jury was called in the case. Whether advisory merely, or otherwise, is not clear. However, the only question of fact submitted to them was that of damages to the plaintiff by reason of the irrigation company's failure to furnish plaintiff "sufficient water for irrigation in accordance with" the alleged contracts. In that connection the court charged the jury that, if the plaintiff did not get sufficient water due to an insufficient snow and rainfall, "the defendant would not be liable under the contract, as that would be what the contract calls 'the act of God.'" The jury rendered a verdict for the plaintiff on the first cause of action, which was based on the first contract, assessing her damages at $400, and on the second cause of action, based on the second contract, at $150. The court itself made findings, in which it is found that in September, 1897, the plaintiff paid to the irrigation company the sum of $247.50 on the first contract. The court

further found "that after allowing all credits due for work and labor performed, and for damages to the plaintiff by the defendant upon said (first) contract, and crediting the amount of the verdict of the jury rendered in said cause, there was still remaining due and unpaid from the plaintiff to the defendant Brown the sum of $403, together with interest thereon at eight per cent. per annum from the ——— day of January, 1908." The court found that the plaintiff paid upon the second contract "all of the consideration therein named, except the sum of $207," and "after allowing all payments made thereon in cash, and made by labor and service, and after crediting the amount of the verdict rendered by the jury for damages," there still remains due and owing on that contract the sum of $207. The court found that the total amount due the defendant Brown was the sum of $610, together with interest at the rate of eight per cent. per annum. The court further found "that there was a shortage of water in the reservoir of said system, caused by the act of God, over which defendants had no control, from 1901 up to and including 1906, and that during all of said period plaintiff received her proportionate part of the waters stored by the defendant Mt. Nebo Land & Irrigation Company," and that she was entitled to one acre foot of water under the terms of her contracts, provided that the irrigation company or its successors were not prevented from storing the waters by the act of God or the result of some act over which the defendants had no control. A judgment was entered in favor of the defendant Brown and against the plaintiff for the sum of $610, together with interest and costs. It was further adjudged that the lands described in the contracts be sold, and the proceeds of sale applied in payment of such amount. From such judgment the plaintiff has prosecuted this appeal on the judgment roll. The errors assigned are that the court failed to find upon all the material issues presented by the pleadings, and that certain of the findings are ambiguous, mere conclusions, and "unsupported by the pleadings."

We think that the findings complained of are open to one or more of the objections raised by the assignment of errors. The contracts as alleged in the complaint are admitted by the answer of the defendants. The contract price of the first contract is $1150. On the face of it, and by the stipulations in the contract, a payment of $247.50 thereon at the time of its execution is acknowledged. The plaintiff alleged that, in addition thereto, she rendered services and performed labor to the value of $986, which should also be applied on the contract. The payment as acknowledged in the contract, and which was also specifically alleged by the plaintiff, is not denied. The defendants denied that the services rendered and labor performed, to be applied on that contract, was of the value of $986. They admitted "that the plaintiff paid in labor upon said (first) contract" the sum of $597.75. A finding was therefore required whether the value of the labor was $597.75 as admitted in the answer, or $986 as alleged in the complaint, or what the value of the labor was. The court failed to make such a finding. That issue was not submitted to the jury, nor did they make any finding thereon. The only issue submitted to them was on the question of damages resulting from the irrigation company's failure to deliver water in accordance with the contracts. The court, after finding that the sum of $247.50 was paid on the first contract, merely by way of conclusion stated that, after allowing "all credits due for work and labor performed," and the damages assessed by the jury, there was still due on that contract the sum of $403. We have no means, except by deductions, of ascertaining what the court allowed "for work and labor performed." The court did allow a payment of $247.50. That was expressly found. The court also allowed the sum of $400 damages assessed by the jury. It found still due $403 and interest. These three amounts make $1050.50. Deducting that from the contract price of $1150 leaves $99.50, which must have been allowed for work and labor. But the defendants admitted that the "plaintiff paid in labor upon said (first) contract" the sum of $597.75. Taking

the defendants' admission as to the value of the labor, $597.-
75, the payment of $247.50 by the plaintiff as found by the
court, the $400 damages assessed by the jury allowed by
the court, making a total of $1245.25, and the contract price,
admitted to be $1150, we cannot understand how or why
there should yet be due on that contract the sum of $403.

The findings in respect of the second contract are also
open to similar objections. The court found that the plain-
tiff "paid upon said (second) contract all of the considera-
tion therein named except the sum of $207." Then the
court made the conclusion that, after crediting all cash pay-
ments, labor performed, and services rendered, which were
alleged in the complaint to be $79 and admitted in the an-
swer to be $57.50, and the damages assessed by the jury,
which were $150, there was still due $207 on that contract;
that is, the plaintiff having "paid all the consideration" on
that contract except $207, and then after allowing the $150
damages assessed by the jury, there was still due $207.

The finding which the court made that the short-
age of water was caused by the act of God was, of
course a mere conclusion. In the next place the court,
when it submitted to the jury the question of damages re-
sulting from the irrigation company's failure to furnish
water, instructed the jury that no liability existed if the in-
sufficiency of the supply was due to the "act of God." By
the verdict which the jury rendered assessing the damages
they necessarily found that the insufficient supply was not
due to such cause. As before observed, we are not informed
whether the jury was merely advisory or otherwise. How-
ever, the court seems to have accepted their verdict as to the
amount of damages which the plaintiff sustained by reason
of the irrigation company's failure to furnish the supply
of water agreed by it to be furnished. Since the court ac-
cepted the damages as found by the jury, we cannot see what
bearing the finding or conclusion had which the court made
that there was a shortage of water due to the act of God, but
that the plaintiff received her proportionate part of the wa-
ters stored by the irrigation company. But no matter what

theory prompted the finding, it is a mere conclusion, and cannot aid the judgment.

We are of the opinion that the judgment of the court below ought to be vacated, and the case remanded for a new trial, with costs to appellant. It is so ordered.

FRICK and McCARTY, JJ., concur.